Michael Allen HUGHES, Appellant,

v.

STATE of Alaska, Appellee.

No. 5217.

Court of Appeals of Alaska.

Sept. 2, 1983.

John Marston Richard, Jr., and Phillip P. Weidner, Drathman & Weidner, Anchorage, for appellant.

John A. Scukanec, Asst. Atty. Gen., Anchorage, and Wilson L. Condon, Atty. Gen., Juneau, for appellee.

Before BRYNER, C.J., and COATS and SINGLETON, JJ.

## OPINION

COATS, Judge.

Michael Hughes appeals to this court raising issues concerning his conviction and sentence of twenty years imprisonment for the crime of manslaughter, and his conviction and sentence of seven and one-half years imprisonment for the crime of attempted armed robbery. We affirm Hughes' manslaughter conviction and sentence and reverse the attempted armed robbery conviction and sentence.

Early on the morning of September 30, 1978, Michael Hughes, Jeffrey Murdock and Manuel Robinson forcibly entered Michael Cornett's Anchorage apartment. Cornett and his guest, Dennis Vandelaar, had earlier allegedly sexually assaulted two teenage prostitute friends of Hughes and Robinson. Cornett and Vandelaar were robbed and beaten by the three intruders. That night, Hughes, Murdock and Robinson attempted an armed robbery of Chino's Restaurant. Hughes claimed he was intoxicated from alcohol and drugs at the time. Owner Joseph Hochong began shooting at the robbers, and Hughes attempted to flee. Attacked by Hochong and Hochong's brother, George, Hughes shot Joseph Hochong to death in the ensuing struggle. He then successfully fought off George Hochong by shoving a candleholder into his face, and fled the scene of the crime. He was arrested on October 2, 1978.

On October 6, 1978, Hughes was indicted on two counts of armed robbery (former AS 11.15.240; former AS 11.15.295), arising out of the apartment robbery conducted with Murdock and Robinson. He was also indicted for attempted armed robbery (same statutes as above and former AS 11.05.020), assault with a dangerous weapon (former AS 11.15.220), and first degree murder (former AS 11.15.010), all arising out of the attempted restaurant robbery conducted with the aforementioned accomplices. Hughes was tried on all counts and found guilty of the two counts of armed robbery of Cornett and Vandelaar in the apartment and one count of attempted armed robbery at the restaurant. The jury was unable to reach a verdict on the murder and assault counts, and the judge declared a mistrial on those counts. Hughes subsequently pleaded no contest to a reduced charge of manslaughter (former AS 11.15.040), reserving his right to appeal under *Cooksey v. State,* 524 P.2d 1251, 1256–57 (Alaska 1974). On February 22, 1980, Judge Ripley sentenced him to concurrent terms of twenty years for manslaughter, ten years for both of the apartment armed robbery counts, and seven and one-half years for the attempted armed robbery at the restaurant.

## MULTIPLE PUNISHMENT DOUBLE JEOPARDY

Hughes argues that the trial judge erred in allowing him to be convicted of both attempted armed robbery and manslaughter.[1] Hughes argues that his conviction of

1. Former AS 11.15.240 reads:
   *Robbery.* A person who, by force or violence, or by putting in fear, steals and takes anything of value from the person of another is guilty of robbery, and is punishable by imprisonment in the penitentiary for not more than 15 years nor less than one year.
   Former AS 11.15.295 reads:
   *Use of firearms during the commission of certain crimes.* A person who uses or carries a firearm during the commission of a robbery, assault, murder, rape, burglary, or kidnapping is guilty of a felony and upon conviction for a first offense is punishable by imprisonment for not less than 10 years. Upon conviction for a second or subsequent of-

fense in violation of this section, the offender shall be imprisoned for not less than 25 years.
Former AS 11.05.020 reads in pertinent part as follows:
   *Punishment for attempt.* A person who attempts to commit a crime, and in the attempt does any act toward the commission of the crime, but fails, or is prevented or intercepted in the perpetration of the crime, when no other provision is made by law for the punishment of the attempt, upon conviction, is punishable . . . .
   (1) If the crime attempted is punishable by imprisonment in the penitentiary or state jail, the punishment for the attempt is by the same imprisonment, as the case may be, for a

both these offenses constitutes a violation of the double jeopardy clauses of the United States and Alaska Constitutions.[2]

Hughes argues that in his case attempted armed robbery was a lesser-included offense of manslaughter and that convicting him of both offenses violated the double jeopardy rule of *Tuckfield v. State*, 621 P.2d 1350 (Alaska 1981). *Tuckfield* held that "double jeopardy is violated by conviction of both an offense and a lesser-included offense" arising from the same criminal conduct. *Id.* at 1352; *See Tookak v. State*, 648 P.2d 1018, 1022 (Alaska App.1982).

■ The state concedes that *Tuckfield* seems to hold that if attempted robbery is a lesser included offense of manslaughter,

then Hughes cannot be punished for both offenses. Without any analysis, the state simply contends that attempted armed robbery is not a lesser included offense of manslaughter. We disagree. Hughes was indicted for the murder of Joseph Hochong on a felony-murder theory.[3] The indictment charged that Hughes purposely[4] killed Hochong in attempting to commit a robbery. The principle that an underlying felony is a lesser-included offense of a felony homicide is well supported by federal[5] and state[6] case law. In Hughes' trial, the court charged that if the jury found Hughes not guilty of felony murder, it could find him guilty of manslaughter as a lesser-included offense of felony murder. The court further instructed the jury that

term not more than half the longest period prescribed as a punishment for the crime. If the period prescribed as a punishment for the crime is an indeterminate or life term, the punishment for the attempt shall be fixed by the court at a term not more than 10 years.
Former AS 11.15.040 reads as follows:
> *Manslaughter.* Except as provided in §§ 10–30 of this chapter, a person who unlawfully kills another is guilty of manslaughter, and is punishable by imprisonment in the penitentiary for not less than one year nor more than 20 years.

2. The fifth amendment to the United States Constitution provides in pertinent part that "nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb . . . ."
Article 1, § 9 of the Alaska Constitution provides in pertinent part that "[n]o person shall be put in jeopardy twice for the same offense."

3. Former AS 11.15.010 provided that "[a] person who . . . in attempting to perpetrate . . . robbery . . . kills another, is guilty of murder in the first degree, and shall be sentenced to imprisonment for not less than 20 years to life."

4. Under former AS 11.15.010, in order to convict a person of felony murder, it was necessary to prove as an element of the offense that he had a specific intent to kill. *Gray v. State*, 463 P.2d 897, 906 (Alaska 1970).

5. *E.g., Illinois v. Vitale*, 447 U.S. 410, 420–21, 100 S.Ct. 2260, 2267–68, 65 L.Ed.2d 228, 238 (1980) ("failure to reduce speed" is lesser-included offense of manslaughter if state proves latter offense by proving former offense); *Harris v. Oklahoma*, 433 U.S. 682, 683, 97 S.Ct. 2912, 2913, 53 L.Ed.2d 1054, 1056 (1977) (underlying armed robbery lesser-included offense

of felony murder); *Stephens v. Zant*, 631 F.2d 397, 401 (5th Cir.1980), *modified on unrelated grounds*, 648 F.2d 446 (5th Cir.), (an underlying felony is a less-included offense of felony murder), *cert. denied*, 454 U.S. 1035, 102 S.Ct. 575, 70 L.Ed.2d 480 (1981); *United States ex rel. Paul v. Henderson*, 535 F.Supp. 677, 680 (N.D. N.Y.1982) (underlying attempted robbery is lesser-included offense of felony-murder), *rev'd on other grounds*, 698 F.2d 589 (2d Cir.1983).

6. *Mitchell v. State*, 270 Ind. 4, 382 N.E.2d 932, 934 (1978) (cannot impose sentences for felony murder and underlying armed robbery without violating double jeopardy); *State ex rel. Wikberg v. Henderson*, 292 So.2d 505, 509 (La. 1974) (defendants pled guilty to underlying attempted armed robbery and convicted of felony murder for death of store owner in gunfight; double jeopardy violated); *State v. Frye*, 283 Md. 709, 393 A.2d 1372, 1374–75, 1379 (1978) (cannot convict for both underlying felonies and murder unless certain that jury did not convict on felony murder theory, even if enough evidence existed to have convicted on premeditated murder); *People v. Wilder*, 411 Mich. 328, 308 N.W.2d 112, 116 (1981) (cannot convict and sentence for felony-murder and underlying armed robbery); *State v. Thomas*, 114 N.J.Super. 360, 276 A.2d 391, 395–96 (1971) (cannot convict for felony murder and underlying robbery); *State v. Thompson*, 280 N.C. 202, 185 S.E.2d 666, 675 (1972); *Commonwealth v. Tarver*, 493 Pa. 320, 426 A.2d 569, 573–74 (1981) (cannot convict for underlying robbery after defendant pled guilty to felony murder); *State v. Innis*, 391 A.2d 1158, 1166–67 (R.I. 1978), *vacated on unrelated grounds*, 446 U.S. 291, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980); *Briggs v. State*, 573 S.W.2d 157, 158 (Tenn. 1978); *Ex parte Jewel*, 535 S.W.2d 362, 365 (Tex.Cr.App.1976).

the elements of the manslaughter offense were that, on or about the thirtieth day of September 1978, (1) Joseph Hochong was killed, and (2) that Hochong was killed during the perpetration of an attempted robbery of which Hughes is guilty.

■ This appears to establish an offense which is similar to the felony-murder cases in the sense that proof of the fact that Hughes engaged in the attempted armed robbery establishes everything necessary to convict him of manslaughter, assuming that the jury found that Joseph Hochong was killed during the attempted armed robbery. There may have been other theories on these facts under which the state could have convicted Hughes of manslaughter, however, no instructions were given on any other theory at Hughes' trial nor has the state argued a different manslaughter theory on appeal.[7] Under these facts, we assume Hughes entered his plea to the misdemeanor manslaughter theory with which the judge charged the jury in the trial. Under this theory of manslaughter, the attempted armed robbery is a lesser included offense of the manslaughter charge. We therefore hold that *Tuckfield* requires us to find that convicting Hughes of both attempted robbery and misdemeanor manslaughter violated double jeopardy and that

Hughes should not have been sentenced for both crimes.

## SUCCESSIVE PROSECUTION DOUBLE JEOPARDY

Hughes points out that when he was tried for the felony-murder charge he was placed in jeopardy and that, although the jury was unable to agree on verdicts on the felony-murder or manslaughter charges, it was allowed to return a verdict of guilty on the attempted armed robbery charge. Hughes contends that he was therefore convicted of a lesser-included offense of manslaughter, and his jeopardy should have ended at that point.[8] He argues that "since the state refused to move for a mistrial as to the jury conviction of attempted armed robbery, it was bound to said conviction and sentence and could not reprosecute Mr. Hughes for the greater offense of manslaughter." The state contends that "if this court determines that both convictions cannot stand, the proper remedy is simply to vacate the conviction and sentence for attempted armed robbery."

■ The double jeopardy prohibition protects against both multiple punishment for the same offense and a second prosecution for the same offense after conviction or

7. The court also instructed the jury on Hughes' version of the case that, although he attempted an armed robbery, he stopped his commission of the crime and attempted to surrender himself to Joseph and George Hochong and effectively communicated his desire to surrender to them. He was then attacked by the Hochongs. He then killed Joseph Hochong while acting in self-defense. The court charged that if the jury found that Hughes was acting in self-defense, they should acquit him of murder and manslaughter. The court also charged that if the jury found that Hughes was attempting to surrender to the Hochongs, effectively communicated his desire to surrender to them, and subjectively believed that shooting Joseph Hochong was necessary to defend himself, but that a reasonable person in Hughes' position would realize that such force was excessive, then the jury should convict Hughes of manslaughter. This instruction sets forth a defense to a murder or manslaughter arising out of the attempted armed robbery. It does not establish a theory of manslaughter which would not arise out of the attempted armed robbery. The

existence of this theory of manslaughter does not change our analysis of this case. In any event, we note that Judge Ripley, in sentencing Hughes, clearly indicated that he disbelieved Hughes when he said he tried to surrender and found that Hughes killed Joseph Hochong in attempting to flee from the restaurant. It is clear that Hughes was not sentenced under this theory of manslaughter.

8. It is possible that there may be theories of second-degree murder and of manslaughter in addition to misdemeanor manslaughter which the state would have been able to present in a second trial where attempted armed robbery would not have been a lesser-included offense. We do not believe it is necessary for us to reach this issue to resolve this case. We assume, for the sake of argument, that the prosecution could only have presented the misdemeanor-manslaughter theory in a second trial and that, in accordance with the first part of this opinion, that attempted armed robbery is a lesser-included offense of misdemeanor manslaughter.

acquittal. *North Carolina v. Pearce,* 395 U.S. 711, 717, 89 S.Ct. 2072, 2076, 23 L.Ed.2d 656, 664–65 (1969); *Calder v. State,* 619 P.2d 1026, 1028 (Alaska 1980). If Hughes had been convicted of both offenses at his trial, he would not have faced a second prosecution. It is clear that this court could have obviated the multiple punishment double jeopardy problem by reversing the lesser-included offense conviction. *Tuckfield v. State,* 621 P.2d 1350, 1353 (Alaska 1981); *Tookak v. State,* 648 P.2d 1018, 1023 (Alaska App.1982). On the other hand, if the state had initially prosecuted and convicted Hughes for the attempted armed robbery and subsequently prosecuted and convicted him for the homicide, it appears that the subsequent greater offense conviction would be unconstitutional. *Brown v. Ohio,* 432 U.S. 161, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977); *Yother v. State,* 182 Mont. 351, 597 P.2d 79, 82–83 (1979).

Here, the court faces an unusual factual situation. The state initially prosecuted the offenses simultaneously. Because of the mistrial on the greater offense, Hughes was reprosecuted for the greater offense in a separate prosecution subsequent to the guilty verdict on the lesser-included offense. However, judgment and sentence for both offenses were simultaneous.

In *Bell v. State,* 249 Ga. 644, 292 S.E.2d 402 (1982), the Supreme Court of Georgia resolved a similar situation in a manner that would allow Hughes' manslaughter conviction to stand. In *Bell,* the defendant was convicted by jury verdict of the lesser-included offense of arson, but the jury was unable to reach a verdict on the greater charge of felony murder. The trial court declared a mistrial on the felony-murder charge at the defendant's request because of prejudicial publicity. Bell was later sentenced to twenty years on the arson charge. The trial judge then rescheduled the felony

murder charge for trial. Bell argued that a retrial on the felony-murder charge violated double jeopardy where he had already been convicted and sentenced on the lesser-included charge of arson. The trial judge ruled against Bell, and he appealed the decision to the Supreme Court of Georgia. The court admitted that it had never before been presented with a double jeopardy claim based upon this factual situation, *Id.* at 404, and cited no on-point cases. The court unanimously held that:

> [W]here the State sought to prosecute a defendant on two offenses in a single prosecution, one of which is included in the other, and the defendant receives a mistrial on the greater offense, the remaining conviction of the lesser offense does not bar retrial of the greater offense.

> If the State retries appellant for felony murder and receives a conviction, however, the trial court must set aside the conviction for the underlying felony of arson in the first degree.

*Id.* at 405. Thus the court treated this situation as if the greater and lesser-included offense convictions were to be secured in a single trial. It cited three well-established principles in support of this holding: a) the general rule that a defendant can be retried on the mistried offense after a constitutionally declared mistrial; b) the rule that a defendant can be prosecuted for homicide after conviction of a lesser included offense when the victim died after the lesser-included offense conviction; and c) the rule that a defendant can be retried on a greater offense if he secured appellate reversal of the greater offense conviction.

■ We do not have to decide in this case if we would go as far as the court did in *Bell.*[9] The case before us is an easier case

---

9. We have found authority which appears to support Hughes' position. In *United States ex rel. Paul v. Henderson,* 535 F.Supp. 677 (N.D.N.Y.1982), the district court faced a situation similar to Hughes'. Paul was indicted and tried in New York state court on charges of, *inter alia,* felony murder and attempted armed robbery. The jury found the defendant guilty of attempt-

ed armed robbery but reached no verdict on felony murder. The state reprosecuted, and at the defendant's second trial, he was convicted of felony murder. He later filed a habeas corpus petition in federal court.

The district court found that the attempted armed robbery charge was a lesser-included offense of the felony-murder charge. Even

than *Bell* since in the instant case Hughes had not been sentenced on the attempted armed robbery. The judge had only received the jury's verdict. We have concluded that the better policy arguments favor letting Hughes' manslaughter conviction stand, while requiring his attempted armed robbery conviction to be vacated. Society has a strong interest "in fair trials designed to end in just judgments." *Wade v. Hunter,* 336 U.S. 684, 689, 69 S.Ct. 834, 837, 93 L.Ed. 974, 978 (1949). We should not forbid the state from trying Hughes on a manslaughter charge unless there are good policy arguments for not allowing that prosecution to go forward. The policy behind the double jeopardy clauses of the United States and Alaska Constitutions is to prevent government overreaching—to prevent the government from wearing down a defendant by continuing to prosecute him or punish him for the same offense. *See Muller v. State,* 478 P.2d 822, 827 n. 15 (Alaska 1971). However, it has long been accepted that if the jury is unable to agree on a verdict on an offense, a mistrial can be declared and the defendant retried. *United States v. Perez,* 22 U.S. (9 Wheat.) 579, 6 L.Ed. 165 (1824). In Hughes' case, the jury was unable to agree on whether Hughes was guilty of felony murder or misdemeanor manslaughter. Hughes has not contended that the jury impliedly acquitted him of the homicide charge in reaching the guilty verdict on the attempted robbery charge. According to the rule of law Hughes asks us to adopt, the prosecution could only have retried him on the homicide offenses had no verdict been received from the jury on the

lesser included offense. Because the prosecution did not discern that attempted armed robbery might be a lesser included offense of the homicide offenses, under Hughes' theory, the state would be precluded from retrying him on these charges. There is no reason to encourage such gamesmanship. Determining whether one offense is a lesser included offense of another is frequently complicated. In the case of the cognate approach to lesser-included offenses, which is the law in this state, whether an offense is a lesser-included offense of another often turns on the proof offered at trial. *See Elisovsky v. State,* 592 P.2d 1221 (Alaska 1979). It is thus especially difficult to determine whether an offense will be a lesser-included offense under this approach.

█ In the instant case, the state clearly intended to retry Hughes on the homicide charges. It is also clear the jury could not agree on the homicide charges. The state and the court apparently did not recognize that the attempted armed robbery could be a lesser-included offense of the homicide charges or that this could create any double jeopardy argument. It does not seem unreasonable to allow the trial judge to accept the verdict and allow the parties to later argue what the judge should do with the verdict. Under the facts of Hughes' case, there was nothing to prevent the trial judge from later declaring a mistrial on the attempted robbery verdict in the event that an actual retrial was held on the homicide

though Paul was initially charged and tried on both offenses, and the reason for the reprosecution was that the first jury had been unable to reach a verdict on the greater offense, the court held that the reprosecution violated double jeopardy. The district court held that the state could not reprosecute Paul on the greater offense while his conviction on the lesser-included offense stood undisturbed. *Id.* at 680–81.

This case was reversed on appeal on different grounds and so the appeals court never ruled on the particular argument on which Paul had prevailed in the district court. *Paul v. Henderson,* 698 F.2d 589 (2d Cir.1983). The appeals court did not reach this argument because they

held that Paul had waived any double jeopardy argument that he was being tried twice for the same offense because he had not objected on this ground before his second trial. The appeals court also held that Paul had no double jeopardy argument that he was punished twice for the same offense because Paul's conviction for attempted armed robbery was set aside in an earlier post conviction relief action.

The district court decision, however, still stands as some authority that, if Paul had objected to being tried for felony murder after being convicted of attempted armed robbery in the first trial, a second trial would have violated double jeopardy, unless the conviction for attempted armed robbery was set aside.

charges.[10] It is hard to see what prejudice Hughes would suffer under such a set of circumstances. We accordingly hold that the double jeopardy clauses of the United States and Alaska Constitutions were not violated by the trial judge taking the jury's guilty verdict on an attempted robbery charge and then later accepting Hughes' plea to the manslaughter charge. However, because the attempted robbery charge to which Hughes pled appears to be a lesser-included offense of the manslaughter charge, Hughes' conviction on the attempted robbery charge must be vacated. *See Bell v. State,* 292 S.E.2d at 405.

As his last point on appeal, Hughes argues that his sentence for manslaughter was excessive. At the time of sentencing Hughes was twenty-one-years old and had no prior convictions. Hughes argues that as a first offender he should not have received the twenty-year maximum sentence for his crime. We disagree. We must look at Hughes' sentence in context. He also was sentenced to two ten-year sentences for the armed robberies of Michael Cornett and Dennis Vandelaar. These crimes were separate and distinct from the attempted armed robbery that led to the death of Joseph Hochong. Hughes' manslaughter sentence for the death of Joseph Hochong was made concurrent with his ten-year armed robbery sentences. In addition, Judge Ripley found that Hughes' conduct which resulted in the manslaughter conviction was particularly serious. Hughes engaged in an armed robbery of a restaurant and knew or should have known of the potential for violence in that situation. Judge Ripley placed considerable emphasis on deterring others who might consider committing a similar crime.

Judge Ripley also indicated that he rejected Hughes' testimony that he tried to surrender and specifically found that Hughes deliberately killed Joseph Hochong in order to attempt to escape from the restaurant.[11] The record supports Judge Ripley's conclusion that the manslaughter offense was particularly serious, and we do not find that the twenty-year sentence that he imposed on the manslaughter charge was clearly mistaken. *McClain v. State,* 519 P.2d 811, 813–14 (Alaska 1974).

The manslaughter conviction and sentence are AFFIRMED. The attempted armed robbery conviction and sentence are REVERSED.

BRYNER, Chief Judge, dissenting.

The majority opinion in this case first concludes that, under the facts presented, the crime of attempted robbery is a lesser-included offense of manslaughter. From this conclusion, the court proceeds to decide a difficult and relatively novel question involving double jeopardy. The court concludes that the double jeopardy clauses of the United States and Alaska Constitutions do not preclude retrial of a defendant for a principal offense when a jury, deadlocked on the principal offense, is permitted to convict on a lesser-included offense, and when the state agrees to entry of a conviction on the lesser-included offense. I have serious reservations about this resolution of the double jeopardy issue.

In particular, I find the reasoning of the court in *Bell v. State,* 249 Ga. 644, 292 S.E.2d 402 (1982), to be unpersuasive. The principles relied upon in *Bell* to support the conclusion that double jeopardy was not violated in that case simply do not support

---

10. We do not reach the issue of whether a mistrial on the attempted robbery charge would be required in the event Hughes was retried for the homicide. The illustration that the trial judge could receive the jury's verdict, consider it, and later declare a mistrial on that verdict only goes to show how far the trial judge could go toward curing any prejudice which might occur from the mere fact of taking the verdict from the jury. We are also not suggesting that Hughes' prior conviction of attempted robbery in the first trial would pre-

clude Hughes from receiving a lesser-included offense instruction on attempted robbery in the event that there was a second trial. *Cf. Padie v. State,* 557 P.2d 1138 (Alaska 1976).

11. Even though the jury could not agree on the issue of whether Hughes deliberately killed Joseph Hochong, Judge Ripley was free to consider this information where it was sufficiently verified. *Huckaby v. State,* 632 P.2d 975, 976 n. 2 (Alaska App.1981).

the Georgia court's conclusion; each of the three principles mentioned in *Bell* is based on policies essentially irrelevant to those presented by the specific double jeopardy issue decided in *Bell* and presented here. I am especially concerned that there is a real potential for unfair and oppressive results in cases such as this. If the prosecution elects to accept the benefits of a conviction on a lesser-included offense, while at the same time proceeding to retry the defendant on the greater offense, then upon retrial the defendant will be placed at a significant disadvantage; at the second trial, the jury will not have the option of convicting the defendant on the lesser-included offense. The jury will be faced with an all-or-nothing proposition as to the defendant's guilt or innocence of the greater charge.

Such a result encroaches on the accused's right against double jeopardy, since the accused is subjected to the prospect of successive trials in which the state's chances of obtaining a conviction on the original crime charged are progressively strengthened by its deliberate election to accept a premature verdict on a lesser-included offense. More significantly, the right of the accused to due process of law is impinged upon. Where the evidence in a criminal case is sufficient to support a possible finding by the jury of a lesser-included offense, due process requires that a lesser-included offense instruction be given upon request of the accused. *Hopper v. Evans*, 456 U.S. 605, 102 S.Ct. 2049, 72 L.Ed.2d 367 (1982). Here, the prosecution, by electing to accept the lesser-included offense conviction, precluded the giving of a lesser-included offense instruction upon retrial, despite the

fact that the evidence would apparently have warranted one.[1]

The majority opinion indicates that the double jeopardy clause should not be applied to cases such as this in the absence of good reasons. I would submit that the foregoing considerations may well constitute sufficient justification to require application of double jeopardy in these circumstances. Ultimately, however, I find it unnecessary to decide this issue, since I conclude that attempted robbery is not a lesser-included offense of manslaughter.

In order to establish first-degree murder in this case, the prosecution relied on a felony-murder theory; thus, of necessity, the state was required to prove Hughes' participation in the attempted robbery as a means of establishing first-degree murder. Because the state had insufficient evidence of premeditation, it was precluded from relying on any theory other than felony murder to establish Hughes' liability for first-degree murder. Accordingly, I agree with the majority's conclusion that attempted first-degree robbery was a lesser offense, necessarily included in the charge of first-degree murder against Hughes.[2]

The same does not hold true with respect to the relationship between attempted robbery and the crimes of second-degree murder and manslaughter. Significantly, the indictment charging Hughes with felony-murder included a specific allegation that Hughes acted with intent to kill, since the felony-murder provision in effect at the time of Hughes' offense required intent to kill as an essential element of felony murder. *See Gray v. State*, 463 P.2d 897, 906 (Alaska 1970). Because the felony-murder charge alleged that Hughes acted with in-

1. I do not mean to indicate that the majority's opinion forecloses the possibility that a trial judge could, in the exercise of discretion, give some form of jury instruction on retrial to cure this potential problem. However, in my view, the potential for injustice to the accused cannot be resolved by leaving the issue of a curative instruction open to the discretion of the trial court. I believe that the only potentially effective curative instruction upon retrial is one that would be available as a matter of right to the accused and would permit the jury to redeter-

mine the accused's guilt as to the lesser-included offense. Such an instruction would resolve any double jeopardy problem where, as in this case, a judgment has not yet been entered on the lesser offense before retrial on the greater. Nevertheless, the instruction would be tantamount to a declaration of mistrial on the initial conviction.

2. *But see Missouri v. Hunter*, —— U.S. ——, 103 S.Ct. 673, 74 L.Ed.2d 535 (1983).

tent to kill, second-degree murder—which required proof of an unjustified, intentional killing—was a lesser offense included in the first-degree murder charge. Similarly, manslaughter, which could be established by proof of an unjustifiable killing—including a reckless homicide—was a lesser-included offense of both first-degree felony murder and second-degree murder.

Both second-degree murder and manslaughter were lesser-included offenses of first-degree murder under the strict, statutory elements analysis, and, thus, reliance on the broad cognate theory of lesser-included offenses adopted in *Elisovsky v. State*, 592 P.2d 1221, 1226 (Alaska 1979), would be unnecessary in order to support second-degree murder and manslaughter as lesser-included offenses. Accordingly, proof of Hughes' participation in an attempted robbery was both legally and actually unnecessary to establish the lesser-included offenses of second-degree murder and manslaughter. Admittedly, the first-degree murder charge was factually related to proof of Hughes' attempted robbery. However, it would be wholly unnecessary for the jury to conclude that Hughes participated in an attempted robbery before it could convict him of second-degree murder or manslaughter. Hughes' act of homicide,

if considered either as an intentional killing or as a reckless killing, could be established without requiring the jury to determine his participation in the attempted robbery.[3] Accordingly, I believe that, except insofar as the attempted robbery was relied on by the state as a means of seeking a first-degree murder conviction, the attempted robbery and the homicide in this case constitute separate offenses in this case and do not merge.

Because Hughes was still under indictment for first-degree murder after being convicted of attempted robbery, and because both second-degree murder and manslaughter were lesser-included offenses of the first-degree murder indictment, I think Hughes could properly have been retried, for either second-degree murder or manslaughter, even assuming that double jeopardy precluded retrial for first-degree felony murder.[4]

This conclusion leaves Hughes' case in an unusual procedural posture. After his initial trial, Hughes pled *nolo contendere* to the lesser offense of manslaughter, reserving his right to appeal the double jeopardy issue under *Cooksey v. State*, 524 P.2d 1251 (Alaska 1974), and *Oveson v. Anchorage*, 574 P.2d 801 (Alaska 1978). Both parties

---

**3.** At trial, Hughes admitted his participation in the attempted robbery, arguing self-defense to justify the homicide. Hughes' admission that he was participating in an attempted robbery at the time of the killing would, of course, make it difficult as a practical matter for the jury to acquit Hughes of attempted robbery. This fact, however, does not serve to convert the attempted robbery into a lesser-included offense of second-degree murder or of manslaughter, even under the cognate approach toward lesser-included offenses. Although Hughes admitted to commission of the attempted robbery, the acts necessary to establish the elements of that offense are independent of the acts constituting second-degree murder or manslaughter. The essential consideration is that neither Hughes' conduct nor his intent in committing the attempted robbery would be necessary components of either second-degree murder or manslaughter.

**4.** I am aware that no lesser-included offense instruction was given on second-degree murder at Hughes' first trial and that the primary basis on which manslaughter was argued was a "felony manslaughter" theory. I do not view these

facts as precluding the prosecution, on retrial, from requesting second-degree murder instructions based upon a theory of intentional but mitigated homicide, such as heat of passion, or from seeking manslaughter instructions based on a theory of reckless and unjustifiable homicide. The first-degree murder charge in the indictment against Hughes alleges an intentional killing perpetrated in the course of an attempted robbery. This indictment is sufficiently broad to provide ample notice of the lesser-included offenses of second-degree murder and manslaughter. I see no reason why the state, on retrial, would be prohibited from arguing a different theory of the case than was presented at Hughes' first trial, as long as the state did not seek to prove commission of a different offense or to argue a theory as to which the indictment did not provide sufficient notice. Nor do I see any reason why the state would be foreclosed on retrial from requesting instructions on second-degree murder simply because it neglected to request such instructions at the initial trial.

and the court below agreed that the double jeopardy claim asserted by Hughes would be dispositive of his case if he prevailed. I believe, however, that Hughes' double jeopardy argument, if resolved in his favor, would at most have been dispositive of the first-degree felony-murder charge. It would not have disposed of the lesser-included offense of manslaughter to which Hughes actually pled.

Because Hughes' double jeopardy claim would not be dispositive of the charge to which he pled, I believe that the only proper recourse is to dismiss this appeal for lack of jurisdiction. *See Oveson v. Anchorage,* 574 P.2d at 803 n. 4. I recognize, however, that such a resolution is not likely to have been foreseen by the parties and would violate the expectations and assumptions upon which Hughes' plea and the state's willingness to accept that plea were based. In remanding this case to the superior court, I would therefore expressly permit Hughes or the state to request withdrawal of the manslaughter plea and to proceed to trial on the charge of second-degree murder and manslaughter.

Given my dissenting view as to the appropriate disposition of the merits of this appeal, I see no need to consider Hughes' sentence appeal.

For the reasons stated, I dissent from the majority's disposition of this case.